For Mr. Rivera, could I ask you to speak up a bit, please, if you wouldn't mind? The acoustics in this room are a little rough. Sorry, Your Honor. Your Honor, Ken Gifford. I represent Mr. Rivera on this. Your Honor, this case, it's a sad case. Mr. Rivera was convicted with murder with special circumstances. And it's even more sad because when one looks at the record on the case, his attorney, Mr. Macias, was deficient in his representation of Mr. Rivera. As the case evolved after his conviction, there was a motion for new trial on the basis of that insufficiency or, excuse me, the inadequacy of counsel, and that was denied. It went up to the third DCA, and on the same basis, same issue, and the conviction was affirmed. California Court of Appeals entered a seven-page opinion dealing with the ineffectiveness and dealt with it almost line by line. How is that in the – how would that not pass muster under the AEDPA standard? Your Honor, the third DCA, in essence, they skipped the issue of the ineffectiveness of the attorney. They did not – in a sense, they did not look at his – what he did. And I know they probably, in reading Strickland, Strickland says on occasion you can just look at the result and see if – would the result change. And they jumped to the result and said, hey, nothing's going to change, even though the – maybe he was affected, but they did not address that. Well, what did the seven-page address? The seven pages, they dealt with it in their opinion. That's correct, Your Honor, but they did not look at what the attorney did. So they addressed the prejudice, is what you're saying. That's correct, Your Honor. And they said, well, you know, the attorney may not have been the greatest, but after all, your guy confessed to his girlfriend and to the police officers, so what more – really, what more could he – could they do? In substance, that's what they said, Your Honor. But I find it in a way kind of incongruous that you can look at the prejudice without actually looking at what the attorney did or did not do, because what he did or did not do is going to affect the outcome. Supreme Court has verified that that's a legitimate thing. You can go to the prejudice prong and skip over the performance prong. That's correct, Your Honor, and that's what I said before. But, again, I find it a little bit incongruous that you can go to the prejudice without looking at what the attorney did, because you have to look at what the attorney did, because what he does has a definite effect on how that jury comes up with a decision. Well, what could the lawyer have done in light of the fact that your client confessed to two different people? What more could – I mean, what could he have done that would have changed it? Your Honor, there was an issue of – to get the special circumstances, he had to be a major participant. He also had to – he had to do it with knowledge that whatever they did posed a serious or harmful – was very harmful, potential harm to the victim. Didn't he testify – didn't the officer testify that Rivera said that he knew that the first guy was at Santana, had a gun, that they were going to carjack the guy? Your Honor, I believe the testimony was that when he saw Santana get into that car, he noticed a bulge in the back of his pants. He thought to be a gun? Yes. I think he thought he might have had a gun. And that they were going to carjack the car salesman? Your Honor, the – and I believe the testimony was by the girlfriend. This was Mr. Rivera's girlfriend about the plan. But in the footnotes to the appellate decision, their DCA, it was acknowledged that the girlfriend said the word plan was hers. It wasn't Mr. Rivera. Whatever. What could he do to – what could a different lawyer do with that? Okay. What the different attorney could have done was he could have looked at the potential witnesses which would – who would talk about Mr. Camacho. Mr. Camacho was a braggart. Mr. Camacho was always saying that he wanted to get this woman, he was going to take that car. But it was a – everyone knew that he was, in essence, just shooting his mouth off. And he could have developed that. Now, I know that – I believe it was Mr. Camacho who testified to that. But that statement by Mr. Camacho could be seen as a self-serving statement. And apparently the jurors – his jury did not attribute much to that comment because he still was – that would have gone to the issue of assured intent. And he was still convicted of that. So the jurors felt that there was assured intent. So Mr. Rivera could have put his own witnesses on to address that issue. Mr. Rivera had the same jury as Mr. Santos, who was acquitted. So the jurors were open, had an open mind to possible defenses. Well, you know, this is all interesting, but it's all belied by the fact that he played a crucial role in the cover-up after the event, including even trying to get rid of, I think, the bloody clothing, which belies what he would have tried to show in the first instance. And the crucial cover-up evidence is devastating. It's uncontradicted. Your Honor, the prosecution always brings in the attempt to flee, attempt to do this thing as consciousness of guilt. But it could be a consciousness of trying to cover up a PC-32, which is a – what Mr. Santos was convicted of, which was an accessory after the fact. So that could have been argued also. Well, but it relates to what he did after the fact, in this case, sort of relates to what occurred prior to the fact that he was involved in at least assisting and knowing what was going on, and he was not dumbfounded by what occurred. Okay. Would that be a fair characterization of his attitude? Well, I hate to be facetious, Your Honor, but he should have done what the defense attorneys used to tell them is keep their mouths shut. And, yeah, he did speak too much. He did speak too much. And he doesn't know the law. So obviously he prejudiced his own case when he talked to the girlfriend, and talked to law enforcement. But his own attorney could have put him on the stand to visit that issue and find out what exactly did he mean when he was talking about all these. What was his depth of understanding of this plan, what Santos and what – not Santos, but what Santana and Camacho were going to do? They could have explored that. Again, he did not have any significant criminal records, so he was not going to be impeached on that basis. So his own testimony could have assisted him. Did you want to reserve any time for rebuttal? You've got about a minute left. Yes, Your Honor. I'd like to say just one thing before that. There were actually – there were four phases to this trial, notwithstanding the voir dire. There was an opening, which – excuse me. There was the discovery and the investigation, which he was criticized by the court, by the federal court, as being deficient. He did not give an opening. His – in the evidentiary phase, cross-examination and examination, he was criticized by both the trial court and the federal court. And his – the federal court criticized his closing. So there was nothing more. He did – he was deficient at every phase of this. Thank you. Mr. Goodwin. Good morning. May it please the Court. My name is Tammy Crenzen, representing Ward and Woodford. The case that Mr. Rivera's counsel had to try was a very difficult case, and that being because Mr. Rivera had admitted to his girlfriend, Amber Morgan, as well as the police, his involvement in the crime from the beginning to the end. Yes, but the magistrate looked at this pretty – the magistrate report is very interesting. And he concluded that there was ineffective assistance of counsel here. He didn't investigate. He didn't call witnesses. His opening and closing – he didn't open at all. And the closing – you know, I read this and I'd say, if there's ever a case where a defendant could say, I tried this without a lawyer, I was denied my Sixth Amendment right, this is the case, isn't it? Well, first of all, the district court found there was deficient performance, non-ineffective assistance to counsel, because the district court went on to say there's no prejudice. But even addressing – and certainly the court of appeals decision that there was no prejudice based on the admissions was not unreasonable under the ADPA. But even the district court's findings – first of all, the issue was that there were witnesses that weren't investigated. However, those witnesses, what they have shown that those witnesses would have said would not have helped Mr. Rivera in any way, given the fact that Mr. Rivera at no time in his admissions, as well as his declaration supporting his petition, said anything about thinking this was a joke. Actually, he said quite the contrary. So it's unclear how the district court could have found that the performance was deficient when these witnesses didn't even have relevant testimony to what was – to what the theory was. In addition, the fact that the district court did go on to say about he should have been put on the stand because he didn't have a prior criminal history, but that also ignores the fact that all these admissions that were given, had he been put on the stand and said anything to the contrary, he certainly could have been impeached. And even at the new trial motion, the prosecutor said, I would have certainly impeached him with his former statements. I understand Mr. Giffords' argument to be that trial counsel really didn't do anything. And because he didn't do anything, he's excused from having to show prejudice under Cronick. What's your answer to that? Well, first of all, that issue has not been certified appealed because it was never raised in the state court nor in the district court. It's not subsumed in the ineffective assistance? No, because you have two separate claims. Cronick skips the prejudice stage. So it's a complete failure to provide a defense versus looking at whether counsel's performance was deficient and prejudicial. So it certainly is a separate claim. But even if this Court were to look at it, there's not a wholesale lack of defense as the cases that the Court has found a Cronick failure. I mean, he wasn't completely absent. He wasn't sleeping during the year. He might as well be sleeping. He didn't do anything. Well, he actually did cross-examine witnesses. He – his closing focused in on there was not a plan, there was no intent, and where was Mr. Rivera's involvement. And given Mr. Rivera's admissions, you certainly could say it was reasonable for him not to put Mr. Rivera on the stand to damage his case further. And certainly if he was going to present any kind of evidence of – that it was a joke, the joke ended when he knew there was a gun and the man was going into a dealership with a gun. And he – and Mr. Rivera's never even said in his declaration what he would have testified to that would have changed the outcome or how these witnesses could have changed the outcome given those admissions. I'd just like to back up to what Judge Silverman just mentioned. Isn't Cronick, although not certified, isn't it part of any proceeding as to whether or not the defendant was represented? And it's difficult to say that there was a lawyer present. I mean, if he were present, he might as well be sleeping because he didn't do anything. So even though it's not certified, isn't it in the nature of a judicial proceeding   he didn't do anything before us, nevertheless. Are you – are you talking about any claim or just subsumed in the Sixth Amendment claim? In this case, the Sixth Amendment claim, because he had no lawyer insofar as trying the case. And if he had no lawyer insofar as trying the case, we don't have to reach the prejudice prong of Strickland, because if he had no lawyer, as guilty as he may be, there was no trial here. There was nothing there. Well, it is a different claim, because under Strickland, you can find either prong, and as the court of appeal did, they skipped over whether there was deficient performance and went to prejudice. But under Cronick, we don't have to find – we don't have to have a two-prong. We just decide the lawyer wasn't there and skip over the prejudice prong and say there was no trial. Then that claim should go back to the State court to be looked at, because of the fact that if there's only prejudice they're looking at, the court hasn't determined that. It hasn't been exhausted, and the State court hasn't had the opportunity to rule on that. So it is a separate claim, because you don't have to – under one, you don't have to get – A matter of degree? Is this a matter of degree and not of kind? It is degree, but it also is of kind. And if you can completely skip over the prejudice, if you presume prejudice, then you have to look at the conduct. And the California court of appeals should be given the opportunity to determine if that conduct is deficient, given the fact that the trial court found that it wasn't deficient performance, found there was no deficient performance and no prejudice, although the trial court commented on some concerns about the defense, said that was deficient performance. Is there any case that says that a regular ineffective assistance of counsel claim and a chronic claim are two different kind of claims, instead of just being variants of the same claim? Is there any case that says that? I'm not aware of a case that says they're completely separate. That's what you've just argued to us. Well, and certainly because under different – when we look at different claims, whether they're exhausted, you look at whether the facts as well as the legal analysis has been presented or the cases, and it's a completely different analysis under that case. So I'm not aware of any cases that specifically say it's different, but it is analyzed as a different type of claim. And it's used – chronic is used – the court has said it's used very sparingly. It's in very rare situations where you will presume prejudice based on counsel's conduct. And what would be wrong with us remanding this to the district court and having the district court look into whether or not there's a fundamental chronic Sixth Amendment violation here, being that just about anyone that's looked at this has found some  Well, it certainly would need to be more than remanded to the district court because the state court should – it's not an exhausted claim, and it should be exhausted before it goes to the district court. So the state court has an opportunity to rule on it, if that were the court's inclination under chronic. And certainly, again, this doesn't fit a situation where counsel didn't do anything. Counsel cross-examined. He made objections. He did a closing argument that hit the main points. And he had little to work with here. He had very little to work with. And so the fact that he didn't present two witnesses that were irrelevant to the case, as well as not have a client testify who had had prior admissions, certainly doesn't show a wholesale failure to defend his client. And even if his closing argument could have been stronger, that certainly doesn't make him an absent attorney, unless this Court has any further questions or submit. Thank you, Ms. Grandin. Mr. Gifford, I think you have about a minute left, half a minute left. Thank you, Your Honor. Your Honor, in the – it was a Third Circuit case, Appell v. Horn, 250 E. Fedd III, 203, which was cited by the Attorney General. They say chronic should be used, the standard should be used for particularly egregious circumstances. And this is a case which there are particularly egregious circumstances. Counsel says that the attorney had little to work with. He had little to work with because he did little work on this case. And that's the fundamental problem. He was there, but as the justice says, it was like he was asleep. And Mr. Rivera went before that court almost. Had he just represented himself, he might have gotten some help from the court. But he had to defer to the attorney he had, and he had no assistance. Thank you, Mr. Chairman. Thank you. Ms. Crenson, thank you also. The case just argued is submitted. Ms. Crenson, I wanted to compliment you. That was a good argument you made. Thank you. Next case, 10-15221, Daniels v. Hildreth. This case is submitted on the briefs. The case then to be argued next is 09-17520. Strike – I'm sorry. Fire v. Unum should be submitted. It's not shown as submitted. I don't believe. But it is submitted.
judges: Thompson, Cowen, Silverman